(60 Misc. Rep. 3.)

## PEOPLE v. FOSTER et al.

(Court of General Sessions, New York County. June, 1908.)

1. INDICTMENT AND INFORMATION — DEMURRER — GROUNDS — AUTHORITY OF GRAND JURY.

Under Code Cr. Proc. § 323, subd. 1, making an indictment demurrable where it appears on its face that the grand jury had no authority to inquire into the crime charged "by reason of its not being within the local jurisdiction of the county," where the nonexistence of the circumstance that the crime was not within the local jurisdiction of the county is not alleged in the demurrer, and it affirmatively appears upon the face of the indictment that the crime was committed in the county, grounds of demurrer that the grand jury had no authority to inquire into the crime charged, and that the facts stated do not constitute a crime of which the grand jury has jurisdiction, are without merit.

2. ELECTIONS—CRIMES AGAINST ELECTIVE FRANCHISE—INDICTMENT—VALIDITY.

An indictment charging that defendants, as election inspectors, made a false statement of the result of the canvass of ballots cast at an "election," which would be in violation of Pen. Code, § 41m, and alleging acts showing another crime, to wit, a violation of section 41, subd. 12, making guilty of a misdemeanor any person who, being an inspector, makes a false statement of the result of a canvass of the ballots cast at a "primary election," does not substantially conform to Code Cr. Proc. §§ 275, 276, requiring an indictment to contain a plain and concise statement of the act constituting the crime, and giving a form of indictment, and is demurrable on that ground, under Code Cr. Proc. § 323, subd. 2.

3. INDICTMENT AND INFORMATION—SIGNING BY DISTRICT ATTORNEY—NECESSITY FOR.

As Code Cr. Proc. § 276, providing that an indictment "should" be signed by the district attorney, is not mandatory, and only requires substantial conformity to the form of indictment therein set forth, and as section 684 provides that neither a departure from the form or mode prescribed by the Code as to any pleading nor an error therein shall render it invalid, unless it shall have actually prejudiced defendant in a substantial right, the omission of the district attorney's name from an indictment properly prosecuted by the Attorney General, and not by the district attorney, is not such an error as will justify the allowance of a demurrer.

4. ELECTIONS — CRIMES AGAINST ELECTIVE FRANCHISE — INDICTMENT — SUFFICIENCY.

Notwithstanding the right of the Attorney General of the state to act may in fact depend on the condition precedent that in the opinion of the Governor crimes against the elective franchise are not being properly prosecuted by the local authorities, and on a consequent request by the Governor upon the Attorney General to act, pursuant to Executive Law (Laws 1892, p. 1691, c. 683, as amended by Laws 1900, p. 1583, c. 737) § 57, an indictment is not required to set forth such condition precedent.

5. INDICTMENT AND INFORMATION—DUPLICITY.

It is only where the identical acts complained of may constitute either of different crimes that such crimes may be charged in separate counts in the same indictment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 414.]

6. WORDS AND PHRASES—"ELECTION."
    The word "election," as used in Pen. Code, § 41zzz, includes general and special elections, but does not apply to primary elections.
    [Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2329-2335; vol. 8, pp. 7647-7648.]

7. INDICTMENT AND INFORMATION—SUFFICIENCY—"ACT CONSTITUTING CRIME."
    The phrase "act constituting the crime," as used in Code Cr. Proc. § 275, requiring an indictment to contain a plain and concise statement of the act constituting the crime, means a statement of the manner in which it is alleged to have been committed.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 266.]

Ellsworth Foster, Anthony Capone, Joseph Parmiginani, and Anthony J. Petrocello were indicted for a crime against the elective franchise, and they demur. Demurrer allowed.

Florence J. Sullivan, for demurrant.

William S. Jackson, Atty. Gen. (Joseph F. Darling, of counsel), for the People.

CRAIN, J. · The defendants demur to the indictment, alleging as grounds (1) that the grand jury by which it was found had no legal authority to inquire into the crime charged; (2) that the indictment does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure; (3) that more than one crime is charged in the indictment, within the meaning of sections 278 and 279; (4) that the facts stated do not constitute a crime of which the grand jury has jurisdiction; and (5) that the facts stated do not constitute a crime of which the Attorney General of the state of New York has jurisdiction, because the facts set forth in the indictment show that the alleged crime was committed under the primary election law, and, if any crime was committed, it was under section 41 of the Penal Code of the state of New York.

The first, fourth, and fifth alleged grounds of demurrer are not recognized as grounds of demurrer by the Code of Criminal Procedure. See Code Cr. Proc. § 323. The first and fourth alleged grounds are seemingly designed to present the same point. Subdivision 1 of section 323 of the Code of Criminal Procedure provides that an indictment is demurrable where it appears upon its face that the grand jury by which it was found had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county. It is the circumstance that the crime is not within the local jurisdiction of the county which deprives a grand jury of legal authority to indict for its commission. The nonexistence of this circumstance, to wit, the circumstance that the crime was not within the local jurisdiction of the county, is not alleged in the demurrer. It affirmatively appears upon the face of the indictment that the crime was committed in New York county, and therefore that the grand jury by which the indictment was found had legal authority to inquire into the crime charged. It is therefore established that the first and fourth alleged grounds of demurrer are without merit.

The question intended to be raised by the fifth alleged ground of demurrer is hereafter incidentally discussed. What has been said

leaves the second and third alleged grounds of demurrer to be considered. Under the second alleged ground, two questions are discussed in this opinion: (1) Was it necessary that the indictment should charge the identical crime which the facts therein alleged tend to show that the defendants committed, and, if so, is such crime charged? and (2) was the signature of the district attorney of New York county necessary upon the indictment?

The decision of the first question turns upon the following: (1) Can the indictment be held good if it charges the defendants with a violation of section 41m of the Penal Code, and states facts showing that they violated section 41, subd. 12, of that Code; or, in other words, must the crime as charged be the same which the facts as stated make out the defendants to have committed? (2) Does the indictment charge the defendants with a violation of section 41m of the Penal Code and not with a violation of section 41, subd. 12, of that Code? When this language is used, reference is had to that part of the indictment purporting to describe or charge the crime—to that part, in other words, which makes the accusation of the crime, as distinguished from those parts purporting to set forth the act constituting the crime; that is to say, the manner or means of its alleged commission. (3) If so, do the acts alleged as constituting the crime come within the purview of section 41m of the Penal Code, or does that section relate alone to general or special elections as distinguished from primary elections? And (4) can it be held that the indictment imperfectly, yet sufficiently, charges a violation of section 41, subd. 12, of the Penal Code?

The indictment contains two counts. Each count purports to charge a crime. Each purports to state the acts alleged to have been committed by the defendants and alleged to constitute the crime. To know what is the crime with which the defendants are charged or accused, recourse must be had to the words of accusation as contained in each count. The crime of which the defendants are charged or accused is, in other words, to be gathered from that part of the indictment which purports to state a charge or accusation, and not from that part of the indictment which purports to set forth the acts constituting the crime or the manner in which it is alleged to have been committed. This view is sustained by a consideration of the function of the accusation, as distinguished from that part of the indictment the purpose of which is to state the acts constituting the crime. The former specifies the charges (Code Cr. Proc. § 276), and the latter the manner of the commission of the offense. The distinction is further illustrated by that provision of section 279 of the Code of Criminal Procedure which makes it permissible to charge, in separate counts, the same crime to have been committed in a different manner or by different means.

The crime charged is not one having a name, such as murder, arson, or larceny. It is one which is necessarily described by words following more or less closely the language of the statute defining it. The language used in each of the counts in the indictment to charge the crime is:

"The grand jury," etc., "accuse," etc., "of the crime of making a false state-
ment of the result of the canvass of ballots cast at an election, while [naming
the defendants] were inspectors of election."

The crime as thus charged is that defined by section 41m of the
Penal Code. It is not that defined by section 41, subd. 12, of that
Code. This is true because the word "election" is used, and not "pri-
mary election," and because the words "election inspectors," and not
"primary election inspectors," or "primary inspectors," are used.
The word "election," in title 5 of the Penal Code, includes general and
special elections, but does not apply to primary elections. See Pen.
Code, § 41zzz. The word having a statutory definition, that meaning
must be ascribed to it in the indictment. See Code Cr. Proc. § 282.
The misdemeanor defined by section 41, subd. 12, of the Penal Code,
on the other hand, is one committed exclusively in connection with a
political caucus or primary election, by election inspectors acting ex-
clusively in the capacity of primary election inspectors, or, as they are
sometimes called, "primary inspectors."

Section 41m provides that an inspector of an election who inten-
tionally makes a false statement of the result of a canvass of the bal-
lots cast thereat is guilty of a felony. Section 41, subd. 12, provides
that any person, being an election inspector or primary inspector, who
makes any false statement of the result of a canvass of the ballots
cast at a primary election, is guilty of a misdemeanor. The insertion
of the word "primary" before the word "election" in the description
of the crime as contained in the indictment, coupled with the inser-
tion of the word "primary" before the designation of the office alleged
to have been held by the defendants, would have made the crime
charged that of violating section 41, subd. 12, of the Penal Code.
The omission of that word makes the crime charged, as stated, that
of violating section 41m of that Code. While the words descriptive
of these crimes are almost identical, the crimes themselves are so dif-
ferent that they are practically impossible of commission at the same
time by the same individuals.

Section 275 of the Code of Criminal Procedure requires:

"The indictment must contain * * * a plain and concise statement of
the act constituting the crime."

This means that it shall state in a plain and concise way the manner
in which it is alleged that the crime was committed. In the form of
indictment set forth as proper by section 276 of the Code of Criminal
Procedure, the language therein used as introductory to the statement
required by section 275 reads "committed as follows." It is the man-
ner of the commission of the crime charged in the indictment which
is to be plainly and concisely stated, and not the manner in which some
other crime has been committed. In other words, sections 275 and
276, read together, contemplate that there shall be a relation between
the crime charged and the statement of the acts constituting it. By
"the acts constituting it" is meant a statement of the manner in which
it is alleged to have been committed. Neither the letter nor the spirit
of the statute is satisfied by an indictment which charges one crime,
and, without stating the acts constituting it, by which is meant the

manner of its commission, sets forth acts constituting a different crime, and such acts only.

Turning, now, to the indictment, we find that the statement of what was alleged to have been done by the defendants, and purporting to be a statement of acts done by them constituting the crime charged, or the manner in which they are alleged to have committed the crime charged, does not make out the commission of that crime, for the reason that it does not appear therefrom that they committed any act in connection with an "election," as that word is used in the statute, or that at the time of the alleged commission of the crime they were acting as "election inspectors," as distinguished from "primary election inspectors," sometimes called "primary inspectors." The duties of a primary election inspector are performed at a time when the duties of an election inspector are not performed. The duties of an election inspector are performed at a time when those of a primary election inspector are not performed. A primary election inspector holds an office other than and distinct from that of an election inspector. He takes a separate and distinct oath. It is an office which is superimposed upon that of an election inspector. See form of oath as contained in Jewett's Election Manual, p. 226, and Laws 1899, p. 983, c. 473, § 5, subd. 2.

We have, therefore, in this indictment an accusation or charge of one crime, to wit, a violation of section 41m of the Penal Code; and we have a statement of acts showing another crime, to wit, a violation of section 41, subdivision 12, of that Code, without any accusation by the grand jury of a violation of that subdivision. If the indictment charges the crime, it does not charge any act constituting such crime. If it charges acts constituting a crime, then it does not charge the crime which such acts constitute. In principle, it is the same as though the indictment had charged the crime of assault in the first degree, and had then set forth acts as constituting that crime which, in fact, were acts constituting larceny, and larceny alone. There is an absence of conjunction of the two elements required, namely, a charge of a specific crime and a statement of acts constituting that crime. This defect in the indictment is not purely formal. It is substantial. It is a substantial nonconformity with the provisions of sections 275 and 276 of the Code of Criminal Procedure, and it is a nonconformity prejudicial to the defendants.

One of the grounds upon which a defendant may demur to an indictment is that it does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure, when this nonconformity appears upon the face of the indictment. Code Cr. Proc. § 323. This is one of the grounds stated in the defendants' demurrer. It will be noted that the conformity required is substantial as distinguished from literal conformity. Turning to sections 275 and 276, it will be seen that the language of the former is mandatory, while that of the latter is permissive. The former contains no requirement that the indictment shall contain words of accusation charging a defendant with the commission of a named or described crime. It is the second subdivision of that section that requires that it shall

contain a plain and concise statement of the act constituting the crime without unnecessary repetition.  This, as we have seen, means the manner of the commission of the offense, as those words are used in section 279.  It is the language which has the same meaning as the bracketed words "here set forth the act charged as an offense," which words immediately precede the concluding words of section 276.  Section 276, in giving the form of an indictment, after the words "by this indictment accuse A. B. of the crime of," says in brackets, ["Here insert the name of the crime, if it have one, such as treason, murder, arson, manslaughter, or the like, or if it be a misdemeanor, having no general name, such as libel, assault, or the like, insert a brief description of it, as it is given by statute], committed as follows," etc., and ends, "Here set forth the act charged as an offense."

The language of section 276 is singular, because of its lack of mandatory character; that is, it does not say that an indictment must be in the form therein stated.  It merely says, on the contrary, that it "may be substantially," and it is, therefore, perhaps, safe to say that, but for the provision contained in section 321 of the Code of Criminal Procedure, that an indictment is open to demurrer if it does not substantially conform to section 276 of that Code as well as to section 275, nonconformity with section 276 might not have vitiated an indictment.  What is substantial conformity?  It is the conformity which exists despite a lack of precision in the indictment as to the precise time when the crime was committed (section 280); despite an erroneous description of the person injured, where the offense involves private injury, if the act is identified (section 281); despite the fact that the statutory words defining the crime are not strictly pursued, where words conveying the same meaning are used (section 283).  It is a conformity which is satisfied if the indictment complies with sections 284, 285, and 684 of the Code of Criminal Procedure.  Section 284 provides that an indictment is sufficient, among other things, if it can be understood; (6) if the act or omission, charged as the crime, is plainly and concisely set forth; (7) "if the act or omission, charged as the crime, is stated with such a degree of certainty, as to enable the court to pronounce judgment upon a conviction, according to the right of the case."  Section 285 provides that "no indictment is insufficient by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant"; while section 684 provides that any departure from the form or mode prescribed by the Code of Criminal Procedure in respect to any pleading or mistake therein does not render it invalid unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right.

An indictment, exclusive of its formal requisites, is divisible into two parts—the accusation and the specification; that is to say, what law it is claimed has been violated, on the one hand, and how it is claimed that it has been violated, on the other.  Comment has been made upon their necessity, their distinction, and their relation.  That the views expressed are in conformity with those enunciated by the Court of Appeals is apparent from a consideration of the language

used by Danforth, J., in delivering the opinion of that court in the case of People v. Dumar, 106 N. Y. 502, 13 N. E. 325. The point decided in that case was that the proof must conform to the pleading, and that evidence tending to show that a defendant had committed a larceny by false and fraudulent representations would not support a conviction where the indictment set forth, as the act constituting the larceny, an unlawful and felonious statutory taking and carrying away. This conclusion was arrived at by an argument based upon the necessity of setting forth in an indictment both the crime charged and the act constituting the crime, and included a statement of the statutory provisions in this behalf and some of the reasons upon which they rested. The question came before the court on an appeal from a judgment of conviction, and was raised by an exception to a denial on the trial of the defendant's motion for his discharge because of such variance between the indictment and the proof. While the case does not decide that an indictment must charge a crime, and that the acts set forth as constituting the crime must constitute the identical crime charged, the following remarks by Judge Danforth, at pages 509, 510, and 511 of 106 N. Y., pages 327 and 328 of 13 N. E., are instructive as indicating his views upon those points:

"That statute [referring to the Code of Criminal Procedure] abolishes all the forms of pleading before existing in criminal actions and enacts that the forms of pleading and the rules by which their sufficiency shall be determined are those prescribed therein (section 273). It declares that on the part of the people the first pleading is the indictment (section 274), and defines this pleading as an accusation in writing charging a person with a crime ,(section 254). It must contain a plain and concise statement of the act constituting the crime, without unnecessary repetition (section 275). The indictment, therefore, must charge the crime, and it must also state the act constituting the crime. The omission of either of these things would necessarily be fatal to the indictment. If there was no accusation of a crime, the paper, however formal in other respects, would not be an indictment, and so there would be no criminal action. If it contained no statement of the act constituting the crime, there would be no description of the offense, and neither an acquittal nor a conviction would enable the defendant to withstand a further prosecution for the same crime. * * * It provides in one sentence for a statement of the name of the crime as murder, larceny, etc., whereof the grand jury accuses the defendant, or, if it be a misdemeanor having no general name, such as libel, assault, etc., requires an insertion of a brief description of it as given by statute, and then adds, 'Here set forth the act charged as an offense.' It provides, also, that 'the indictment must charge but one crime, and in one form, except where it may be committed by different means' (section 278), in which case the crime may be charged in separate counts to have been committed by different means (section 279). We see, therefore, that the indictment must name the crime and state the act constituting it. The accused could not fail to understand, from the indictment, that he was charged with the crime of grand larceny. In that respect the Code was complied with. It stated, also, a particular act as constituting the crime. In that respect, also, the Code was complied with. The difficulty is that the act stated was not proven, and that the act proven was not stated."

This language was used in 1887, two years after the language used by Bradley, J., in delivering the opinion of the General Term of the Supreme Court in the case of People v. Sullivan, 4 N. Y. Cr. R. 193. If the language of Bradley, J., in that case is to be considered as necessarily opposed to that used in the Dumar Case, it must be considered

as disapproved by the later authority emanating from the higher court. A careful consideration, however, of the Sullivan Case leads to the conclusion that it is perhaps not necessarily in conflict with the views expressed in the Dumar Case.  In the Sullivan Case the indictment charged in its formal words of accusation the crime of assault in the second degree.  It then purported to set forth acts which made out the crime of assault in the first degree.  The jury, upon evidence sufficient to warrant a conviction of the crime of assault in the second degree, convicted the defendant of that crime.  Broadly speaking, assault in all its degrees may be considered one crime, to wit, a crime having different degrees; so that, indeed, under an express statutory provision (Pen. Code, § 10), a jury convicting a defendant of assault would be required to find the degree of that crime of which he was guilty.  That section provides:

"Whenever a crime is distinguished into degrees, the jury, if they convict the prisoner, must find the degree of the crime of which he is guilty."

The language of this section imports that a crime—that is to say, one and the same crime—may be distinguishable into degrees.  Furthermore, section 390 of the Code of Criminal Procedure provides that a jury which is satisfied from the evidence that a defendant has committed a crime, but entertains a reasonable doubt as to the degree in which he has committed it, must find him guilty in the lowest degree. This section, likewise, impliedly treats, for certain purposes, the various degrees of a crime as constituting in the aggregate one crime. Again, in the Sullivan Case, the fault in the statement of facts was the fault of surplusage; and the principle applies that surplusage does not vitiate.  From what has been said the conclusion is therefore reached that the indictment cannot be held good, because it charges the defendants with a violation of section 41m of the Penal Code, and states acts showing a violation of section 41, subd. 12, of that Code alone.

Was the signature of the district attorney necessary upon the indictment?  A proper construction of section 57 of the executive law (Laws 1892, p. 1691, c. 683, as amended by Laws 1900, p. 1583, c. 737) divides that section into three parts.  The first makes it the duty of an Attorney General to act in election cases in any county where the Governor advises the Attorney General that he (the Governor) doubts whether the law relating to crimes against the elective franchise is being properly enforced.  The second provides what the Attorney General shall in such event require from the district attorney of the county, and what in such event he may require from the state superintendent of elections in any county within the metropolitan election district. The third part of the section makes it mandatory upon the Attorney General to assign one or more deputies to act as counsel for the state superintendent of elections, and to take charge of prosecutions arising in any county included in the metropolitan election district, as described in chapter 676, p. 1612, of the Laws of 1898, under said chapter and under title 5 of the Penal Code.  It provides that such deputy shall represent the people of the state in all such prosecutions before all magistrates and in all courts and before any grand jury

cognizant thereof. Under this last clause the Attorney General acts for the state superintendent of elections, without the necessity for communication or direction from the Governor, his action being in no sense dependent upon any imperfect enforcement by the district attorney of the law relating to crimes against the elective franchise; and he acts by virtue of his office in all matters relative to crimes under title 5 of the Penal Code, which includes crimes in connection with primary elections, as well as in connection with general or special elections.

If the right of the Attorney General to act in the case at bar did in fact depend upon the existence of a precedent condition, to wit, an opinion entertained by the Governor that crimes against the elective franchise were not being properly prosecuted in New York county, and upon a consequent request upon him by the Governor, pursuant to section 57 of the executive law, it was in no sense requisite to set forth in the indictment the existence of this condition precedent, for it formed no part of that which had to appear to the grand jury before they could find the indictment, and so no part of that which it would be necessary for the prosecution to prove upon a trial to warrant a conviction. The people complain, and whether or not the Attorney General has authority to represent them is immaterial, as respects the sufficiency of the indictment, when the indictment is once found by a competent grand jury. The authority of the Attorney General forms no part of the people's cause of action as set forth in the indictment, and not only is it unnecessary for an indictment to set forth anything in this regard, but it would be manifestly improper for it to do so. The illustrations given in the defendants' brief of cases, where the right or authority must be set forth, are all instances where the party plaintiff had to allege his right or authority to sue. As stated, the people in a criminal action are the plaintiffs, and all that an indictment is is their bill of complaint against a defendant. The indictment, being a pleading, its function is to set forth the people's cause of action against the defendant, and, barring its formal parts, it should set forth nothing else. This is in accord with both the spirit and the letter of sections 275 and 276 of the Code of Criminal Procedure.

A different question would be presented on a motion to dismiss because of the presence in the grand jury room of a person not authorized by law to be there; and if in a given case on such a motion it were contended that a representative of the Attorney General was there without right, the court in its discretion might require him to make proof of the extrinsic facts conferring upon him authority to be present. On a motion to dismiss an indictment because of the presence in the grand jury room of a person not authorized by law to be there, the broad question would be presented as to whether, under any circumstances, violations of the primary election law can be presented to a grand jury by the Attorney General, and, if so, whether such circumstances had been made to appear to exist in the case before the court. On the trial of a demurrer, on the other hand, only questions of pleading are presented; and the broad question of the rights

of the Attorney General in connection with alleged violations of the primary election law is not presented.

This question, therefore, on this demurrer, comes at best only incidentally before the court. There is no statutory requirement that an indictment shall be signed by the Attorney General. His signature upon it, in a case where it is proper for him to act, is appropriate, and serves a useful purpose, namely, the purpose of apprising a defendant into whose hands his prosecution is intrusted and upon whom he may serve such legal papers as he may find occasion to serve as incidental to the criminal action against him. In any event, in view of the absence of any statutory requirement for such signature, all that can be said of its presence is that it is surplusage which does not vitiate. If a defect, it is merely one of form, not prejudicing the defendant. Code Cr. Proc. §§ 285, 684. In cases concededly properly presented to a grand jury by the Attorney General, the signature of the district attorney is customarily omitted. No such case has been found in which the sufficiency of the indictment has been successfully assailed because of such omission. The question as to whether the matters embraced in this indictment should have been presented to the grand jury by the district attorney, and not by the Attorney General, cannot be raised by demurrer. So far as the indictment considered as a pleading attacked by demurrer is concerned, the signature and official title upon it of the Attorney General can be considered as surplusage; and the question then becomes, as first stated, whether the indictment, lacking as it does the signature of the district attorney, is fatally defective.

Section 276 of the Code of Criminal Procedure provides that an indictment "should be signed by the district attorney." These words were inserted by amendment in 1882. Laws 1882, p. 489, c. 360. Before that there was no such statutory requirement. This language is broad enough to make it alike applicable to instances, on the one hand, in which the Attorney General, personally or by deputy, appears before the grand jury, and the prosecution of which is devolved upon him either by executive communication or mediately by statutory requirement, and which, therefore, are not to be prosecuted by a district attorney, as well as to cases, on the other hand, to be prosecuted by the district attorney. It will be noticed that, while the language is broad, it is not mandatory. The word "should" is used, and not "must" or "shall." Section 284 of the Code of Criminal Procedure, moreover, provides when an indictment is sufficient. It enacts that it is sufficient when certain enumerated things can be understood from it. These enumerated things do not include the name of the district attorney by whom it was drawn, or by whom the action was initiated, and by whom it is to be prosecuted. In the light of the fact that section 276 of the Code of Criminal Procedure, in which this requirement is contained, does not use respecting it a mandatory word, and, moreover, only requires "substantial" conformity to the form of indictment therein set forth; and in the light of the provision of section 684, Code of Criminal Procedure, that neither a departure from the form or mode prescribed by the Code, in respect to any pleading,

etc., nor an error or mistake therein, renders it invalid, unless it have actually prejudiced a defendant or tend to his prejudice in respect to a substantial right, the omission of the district attorney's name from the indictment in the case at bar, if a defect, is not one of such a character as would justify the allowance of this demurrer. Doubtless the purpose of the statute in prescribing that the district attorney's name "should", be upon an indictment was mainly to inform a defendant of the name and office address of the officer by whom he would be prosecuted, and therefore upon whom and where he should serve such papers as, in the course of the criminal action against him, it might become requisite or desirable for him to serve. So far as the rights of a defendant in a criminal action are concerned, the presence upon an indictment of a district attorney's name is required for substantially the same reasons that the name and address of the plaintiff's attorney are required upon a complaint. Where, therefore, a given criminal action is properly prosecuted by the Attorney General, and not by the district attorney, the presence of the latter's name upon the indictment, if not actually misleading, serves no useful purpose; and these considerations are to be borne in mind in the case at bar.

Further, it is to be remembered that an indictment is found by a grand jury. This is a body constituted by law, with defined duties and prescribed powers. The manner, even, in which it shall perform such duties and exercise such powers, is in large measure a matter of statutory regulation. As an outward and visible sign that an indictment has in fact been found by a grand jury, the paper purporting to be an indictment must bear the signature of the foreman of the grand jury. Code Cr. Proc. § 268. The district attorney, in conjunction with the judges of the court, are the legal advisers of the grand jury. If the grand jury seek legal advice, they must seek it from one or the other or both. They are, however, not compellable to seek such advice from the district attorney. They customarily and properly seek it from him. So, customarily and properly, in all cases which it will become his duty to prosecute, they request him to draw indictments embodying in legal form the accusations or charges against individuals of crime. The wisdom and propriety of this course, except under extraordinary circumstances, are manifest. It ordinarily insures that the indictment will be drawn, not merely in proper and legal form, but in such form as, according to the judgment of the one charged with the duty of prosecuting the defendant therein named, will result in the least likelihood of a miscarriage of justice. The power, however, of a grand jury to indict is not dependent upon the consent of the district attorney; and they are not, as matter of law, compellable to have the indictments which they file drawn by the district attorney or by any person other than themselves. The constraint of secrecy which is upon them would doubtless prevent the employment for this purpose of any outside unofficial agency. These considerations, therefore, reinforce the conclusion that the omission of the signature of the district attorney of New York county to the indictment in the case at bar, if a defect, is not such a noncompliance with the provisions of section 276 of the Code of Criminal Procedure as will sustain the demurrer upon that alleged ground in this case.

The conclusion is therefore reached that the second alleged ground of demurrer, to wit, that the indictment does not conform substantially to the requirements of sections 275 and 276, is well taken, because the acts set forth as constituting the crime do not make out the crime as charged, but that the objection to the indictment that. it does not contain the signature of the district attorney is not well founded.

It is sufficient to say, respecting the remaining alleged ground of demurrer, to wit, that more than one crime is charged in the indictment within the meaning of sections 278 and 279, that the conclusion is reached that this is not so. Seemingly but one crime is charged, to wit, a violation of section 41m of the Penal Code. If, however, the contention of the Attorney General is correct, to the effect that the indictment was intended to plead two separate crimes, one in its first count under section 41m of the Penal Code, and the other in its second count under section 41, subd. 12, of that Code, then the demurrer upon the last-mentioned ground is well taken, for the reason that such two crimes, if so pleaded, may not be united in one indictment. It is only where the identical acts complained of may constitute different crimes that such crimes may be charged in separate counts in one and the same indictment. In the case at bar the acts complained of cannot constitute a crime under section 41m of the Penal Code, for that section does not relate to primary elections, but does relate to general and special elections only.

The defendants' demurrer is allowed.

Demurrer allowed.