### UNITED STATES v. UNITED STATES BREWERS' ASS'N.

### SAME v. ALTOONA BREWING CO. et al.

(District Court, W. D. Pennsylvania. December 23, 1916.)

Nos. 25, 26.

1. UNITED STATES ⟜11—POWER OF CONGRESS—ELECTIONS OF REPRESENTATIVES.

Under Const. art. 1, § 2, cl. 1, providing that the House of Representatives shall be composed of members chosen by the people of the several states and that the electors shall have the qualifications requisite for electors of the most numerous branch of the state Legislature; article 1, § 4, cl. 1, providing that the times, places, and manner of holding elections for Senators and Representatives shall be prescribed by the Legislature of the state, but that Congress may make or alter such regulations except as to place of choosing Senators; article 1, § 8, cl. 18, giving Congress power to make laws necessary to carry into execution the powers vested therein; and article 6, cl. 2, making the Constitution and the laws enacted in pursuance thereof the supreme law of the land—the right to vote for Representatives is one conferred by the federal Constitution, though the qualifications for electors are determined by the states, and Congress can protect the electors in the enjoyment of that right.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 7; Dec. Dig. ⟜11.]

2. UNITED STATES ⟜11—POWER OF CONGRESS—ELECTIONS OF REPRESENTATIVES.

Congress can exercise its constitutional power to regulate the times, places, and manner of holding elections for Representatives, though state officers are to be chosen at the same election.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 7; Dec. Dig. ⟜11.]

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. UNITED STATES ☞11—RIGHT OF SUFFRAGE—POWER OF CONGRESS—ELECTIONS OF REPRESENTATIVES.

Under Const. art. 1, § 2, cl. 1, providing that the House of Representatives shall be composed of members chosen by the people of the several states and that the electors shall have the qualifications requisite for electors of the most numerous branch of the state Legislature; article 1, § 4, cl. 1, providing that the times, places, and manner of holding elections for Senators and Representatives shall be prescribed by the Legislature of the state, but that Congress may make or alter such regulations except as to place of choosing Senators; article 1, § 8, cl. 18, giving Congress power to make laws necessary to carry into execution the powers vested therein; and article 6, cl. 2, making the Constitution and the laws enacted in pursuance thereof the supreme law of the land—Congress had power to enact Cr. Code, § 83 (Act March 4, 1909, c. 321, 35 Stat. 1103 [Comp. St. 1913, § 10251]), forbidding any corporation from making a money contribution in connection with any election at which a Representative in Congress is to be voted for, since any interference with the right of the elector to make up his mind for whom he will vote is as much an interference with his right of suffrage as preventing him from voting, and a law intended to secure a free and intelligent choice by preventing the concerted use of money is a regulation of the manner of holding the election.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 7; Dec. Dig. ☞11.]

4. CRIMINAL LAW ☞13—CAMPAIGN CONTRIBUTIONS—STATUTE—UNCERTAINTY.

Cr. Code, § 83, prohibiting any corporation from making money contributions in connection with an election at which Representatives in Congress are to be voted for, is not invalid for uncertainty because it does not define what shall be a money contribution in connection with an election, since that expression has a definite meaning, though it might be difficult to apply it in particular cases.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. ☞13.]

5. CONSTITUTIONAL LAW ☞90—FREEDOM OF THE PRESS—CAMPAIGN CONTRIBUTIONS.

Cr. Code, § 83, forbidding corporations from making contributions in connection with an election at which Representatives are to be voted for, does not prohibit the freedom of speach or of the press.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 172; Dec. Dig. ☞90.]

6. STATUTES ☞64(6)—PARTIAL INVALIDITY—EFFECT.

If the provision of Cr. Code, § 83, prohibiting money contributions by corporations in connection with an election at which Presidential and Vice Presidential electors are to be voted for, is invalid because those electors are state officers, such invalidity does not affect the validity of the section in so far as it applies to elections for Representatives in Congress.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 63, 195; Dec. Dig. ☞64(6).]

7. CONSPIRACY ☞43(6)—INDICTMENT—OBJECT OF CONSPIRACY.

An indictment against corporations for conspiracy to make money contributions in connection with an election at which Representatives in Congress are to be voted for, contrary to Cr. Code, § 83, need not allege that offense with the particularity of an indictment directly charging it as an offense, but is sufficient if it identifies the offense to a common intent.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 91; Dec. Dig. ☞43(6).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. INDICTMENT AND INFORMATION ⟐71—REQUISITES—DESCRIPTION OF OFFENSE.

An indictment is sufficient if it advises the defendants of the nature and cause of the accusation against them with such particularity as to enable them to prepare the defense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 144, 174, 193, 194; Dec. Dig. ⟐71.]

9. INDICTMENT AND INFORMATION ⟐60—REQUISITES—EVIDENCE—MEANS OF COMMITING CRIME.

An indictment must fully and clearly set out the elements which constitute the crime, but need not allege matters of evidence nor the means by which the crime was to be accomplished, unless the act is one the criminality of which depends on the circumstances under which it was done.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 182, 266, 267; Dec. Dig. ⟐60.]

10. CONSPIRACY ⟐43(5) — INDICTMENT — OVERT ACTS — CONNECTION WITH CHARGE.

An indictment for conspiracy need not, in alleging overt acts committed by one of the conspirators, set forth the manner in which those acts tended to effect the purpose of the conspiracy; it being sufficient to allege that they were done to effect that purpose.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 89; Dec. Dig. ⟐43(5).]

The United States Brewers' Association and others and the Altoona Brewing Company and others were indicted for conspiring to make money contributions in connection with an election at which Representatives in Congress were to be voted for. On motions to quash the indictments and demurrers to the indictments. Motions to quash denied, and demurrers overruled.

E. Lowry Humes, U. S. Atty., of Pittsburgh, Pa.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for United States Brewers' Ass'n and others.

James Francis Burke, of Pittsburgh, Pa., for Ft. Pitt Brewing Co.

THOMSON, District Judge. We have here two indictments, one against a large number of Pennsylvania brewing corporations, and the other against a large number of brewing corporations of the state of Pennsylvania, and the United States Brewers' Association, a corporation of the state of New York. The indictments are similar in form and charge the defendants named therein, under section 37 of the Penal Code, with conspiracy to violate section 83 of the Criminal Code of the United States, prohibiting money contributions to be made by certain corporations in connection with any election at which, among others, Representatives in Congress are to be voted for.

To the indictments so found the defendants have demurred, and have also filed motions to quash. The motions to quash challenge the constitutionality of section 83 of the act of Congress, while the demurrers deny the validity of the indictments as to certain matters of substance and form. These will be dealt with in a single opinion. If section 83 is void because it violates the Constitution, the offense therein prescribed against would not exist, and hence there could be no con-

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

spiracy to commit it. Four reasons are assigned in the motion to quash, against the validity of the statute under the Constitution: First, section 83 was and is not within the power of Congress to enact; second, that it is void for vagueness and uncertainty; third, that it violates the first amendment to the Constitution, in that it attempts to prohibit, make criminal, and punish, the freedom of speech and of the press in the discussion of candidates and of political questions involved in such elections; fourth, that it is void and beyond the power of Congress, in that it attempts to prohibit, make criminal, and punish money contributions made to a candidate for a state office, or to the agent of such candidate or in connection therewith.

In order to keep this opinion within reasonable limits as to length, I shall be compelled to state my conclusions without great elaboration of the reasons upon which these conclusions are based. Section 83 in question provides as follows:

"It shall be unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a money contribution in connection with any election to any political office. It shall also be unlawful for any corporation whatever to make a money contribution in connection with any election at which Presidential and Vice Presidential electors or a Representative in Congress is to be voted for, or any election by any state legislature of a United States Senator. Every corporation which shall make any contribution in violation of the foregoing provisions shall be fined not more than five thousand dollars; and every officer or director of any corporation who shall consent to any contribution by the corporation in violation of the foregoing provisions shall be fined not more than one thousand dollars, or imprisoned not more than one year, or both."

It will be observed that the section deals with two classes of corporations, namely, federal corporations and those chartered under the laws of a state. The former being creatures of federal law, there is no contention as to them that Congress has exceeded its powers. What as to corporations of the state, with which the act also deals? Turning to the Constitution to determine what powers have been given to Congress over the subject in question, we find the following provisions:

Article 1, § 2, cl. 1, provides as follows:

"The House of Representatives shall be composed of members chosen every second year by the people of the several states and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state Legislature."

Article 1, § 4, cl. 1, provides:

"The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators."

Article 1, § 8, cl. 18, gives to Congress the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof."

Article 6, cl. 2, provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under

the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

From these provisions of the Constitution and the interpretations put upon them by the federal courts, certain propositions may be safely asserted:

[1] 1. The right to vote for federal officers is conferred by the federal Constitution, the House of Representatives being chosen every second year by the people of the several states, the electors in each state having the qualifications requisite for electors of the most numerous branch of the state Legislature. The elector being thus qualified by state laws, but deriving his right to vote for members of Congress from the Constitution of the United States itself, it follows as a necessary conclusion that Congress has the power to protect him in the enjoyment of that right.

2. While under the Constitution the times, places, and manner of holding elections for Senators and Representatives shall be prescribed in each state by the state Legislature thereof, Congress, except as to the places of choosing Senators, may at any time by law make or alter such regulations. Thus the ultimate power was wisely conferred on Congress so that the states might not by any law or obstructive process prevent the election of the Senate and House of Representatives and thus endanger the very existence of the republic itself. Story on The Constitution, par. 817.

3. In the exercise of this authority, Congress in 1842, to prevent an undue preponderance of power to the political party in a state which had a majority of votes however small, enacted that each member should be elected by a separate district composed of contiguous territory. Lest the Legislature of some state should fail to elect Senators at the proper time, Congress by act has compelled the two bodies of the Legislature to meet in joint session on a given day; to vote for Senator, and meeting on each day thereafter until a Senator is elected. To remedy certain evils growing out of the election of members of Congress at different times in different states, Congress required all the elections for said members to be held on the Tuesday after the first Monday of November of every second year. Most state Legislatures for their own accommodation have fixed the same day for the holding of state elections; otherwise, the election on the day fixed by Congress would have been for the choosing of Congressmen alone.

[2] 4. Congress having been vested with power to prescribe the times, places, and manner of holding elections for Senators and Representatives, that body has undoubted power to provide laws to regulate those elections. In the language of the Supreme Court, in Ex parte Yarbrough, 110 U. S. 661, 4 Sup. Ct. 157, 28 L. Ed. 274:

"Will it be denied that it is in the power of that body to provide laws for the proper conduct of those elections? to provide, if necessary, the officers who shall conduct them and make return of the result? and especially to provide, in an election held under its own authority for security of life and limb to the voter while in the exercise of this function? Can it be doubted that Congress can by law protect the act of voting, the place where it is done, and the man who votes, from personal violence or intimidation and the election it-

self from corruption and fraud? If this be so, and it is not doubted, are such powers annulled because an election for state officers is held at the same time and place? Is it any less important that the election of members of Congress should be the free choice of all the electors because state officers are to be elected at the same time? Ex parte Siebold, 100 U. S. 371 [25 L. Ed. 717]."

In the same opinion (110 U. S. at page 666, 4 Sup. Ct. at page 159, 28 L. Ed. 274), it says:

"It is as essential to the successful working of this government that the great organisms of its executive and legislative branches should be the free choice of the people as that the original form of it should be so. * * * In a republican government, like ours, where political power is reposed in representatives of the entire body of the people, chosen at short intervals by popular elections, the temptations to control these elections by violence and by corruption is a constant source of danger."

See, also, Ex parte Clarke, 100 U. S. 399, 25 L. Ed. 715; In re Coy, 127 U. S. 751, 8 Sup. Ct. 1263, 32 L. Ed. 274.

5. In the exercise of its prerogatives and to secure greater economy and efficiency, the government has thought best that certain artificial bodies should be created with certain fixed and definite powers, and acting within certain prescribed limitations. These artificial creatures are not citizens of the United States, and, so far as the franchise is concerned, must at all times be held subservient and subordinate to the government and the citizenship of which it is composed.

6. It may be said that there are three means of participation in the government so far as its representative nature is concerned, namely: By the exercise of the right of suffrage; by persuasion or coercion of the individual possessing that right; and by furnishing the means by which the individual may be persuaded or coerced. The time has not come and probably never will come, when the right of suffrage will be extended to the artificial beings known as corporations.

7. To prevent undue influence by the second and third means, nearly every state has enacted laws commonly called "Corrupt Practices Acts," prescribing limitations on the exercise of influence over the voter at elections. That the government has equal concern in preserving the freedom of the voter and the purity of the ballot when its Representatives in Congress are to be voted for needs only the statement to be conceded.

8. By various acts Congress has undertaken to control the agencies by which political activities in campaigns may be carried on, the amount of money which a candidate may spend, the purposes for which it may be expended, and the manner of accounting for all such expenditures. Section 83 in question is in line with this wise and beneficent legislation by undertaking to place a prohibition against political activities by those artificial beings who are merely the creatures of the law. That Congress may control those corporations which the federal government has created goes for the saying.

[3] 9. And when we reflect that Congress is here dealing with elections at which Representatives in Congress are being voted for; that an election is intended to be the free and untrammeled choice of the electors; that any interference with the right of the elector to make up his mind how he will vote is as much an interference with his

right to vote as if prevented from depositing his ballot; that the concerted use of money is one of the many dangerous agencies in corrupting the elector and debauching the election; that any law the purpose of which is to enable a free and intelligent choice, and an untrammeled expression of that choice in the ballot box, is a regulation of the manner of holding the election—the power of Congress to prohibit corporations of the state from making money contributions in connection with any such election appears to follow as a natural and necessary consequence.

[4] The second reason assigned in the motion to quash alleges the invalidity of the statute because vague and uncertain, failing to define what contributions shall be considered a money contribution in connection with an election.

This reason raises a question of the construction of the act for the court's interpretation and does not go to the constitutionality of the act itself. Nash v. U. S., 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232.

The words "money contributions" are not vague and uncertain, but, on the contrary, their meaning is plain, and their purpose as used in the act unmistakable. Whether, in any given case, an expenditure by a corporation shall be construed as "a money contribution in connection with any election," within the spirit, intent, and meaning of the act of Congress, may become a question for the court or jury in the light of all the circumstances of the case.

It is by no means uncommon, in applying legislative enactments to the varying facts and circumstances, difficulties of interpretation arise, but this fact does not invalidate, or tend to invalidate, the law.

[5] The third reason assigned is that section 83 violates the first amendment to the Constitution, in that it attempts to prohibit, make criminal, and punish the freedom of speech and of the press, in the discussion of candidates and all political questions involved in such election.

The section itself neither prevents, nor purports to prohibit, the freedom of speech or of the press. Its purpose is to guard elections from corruption, and the electorate from corrupting influences in arriving at their choice.

Under the Corrupt Practices Act of Pennsylvania (Act March 5, 1906 [P. L. 78, § 3]), no person, not a candidate or a treasurer of a political committee, may pay, give, or lend any money or valuable thing or any election expenses whatever, except to a candidate or to a political committee. More than once the Supreme Court of the state has sustained the constitutionality of the act. So far as I am aware, it has never been claimed that this general restriction upon political contributions was an infringement of the freedom of speech or of the press.

[6] The fourth reason assigned against the validity of the act is that it tends to prohibit, make criminal, and punish money contributions made to a candidate for a state office, or to the agent for such candidate, or in connection with his election. As I understand defendants' position, this reason is based on the use of the words "any election at which Presidential and Vice Presidential electors" are "voted for."

If it should be held that Congress exceeded its power in including, among others, elections in which Presidential and Vice Presidential electors are to be voted for, on the ground that they are officers of the state and not of the federal government, that would not, in my opinion, invalidate the act except as to that particular provision.

If that which is unconstitutional can be separated from that which is not, the one may be rejected, and the other retained. This rule is recognized in U. S. v. Reese, 92 U. S. 214, 23 L. Ed. 563, and U. S. v. Steffens, 100 U. S. 82, 25 L. Ed. 550, cited in briefs of defendants' counsel.

On the whole, I am of opinion that, in enacting section 83, Congress kept within its constitutional powers. Were I in doubt upon this question, I would resolve that doubt in favor of the constitutionality of the act.

### As to the Demurrers.

In support of these, various reasons have been assigned, which I will not stop to consider in detail. They may be summed up in the allegation that the indictment itself does not state sufficient facts or grounds to constitute on the part of the defendants, or either of them, an offense against the United States nor the violation of any law of the United States; and that the indictment is not direct or certain in the description of the offense charged or attempted to be charged against them.

There is a single count in each indictment, drawn under section 37 of the Criminal Code, making it a crime for two or more persons to conspire to commit an offense against the United States, and one or more of such parties do some act to effect the object thereof.

[7] It must be borne in mind that the government has not charged as a substantive offense that the defendants actually within the time set forth made money contributions in connection with the elections set forth in said indictments. On the contrary, they are charged only with conspiracy to commit that offense. In such case, the authorities all show that the offense which is intended to be committed as a result of the conspiracy need not be described with the particularity required in an indictment in which such matter was charged as a substantive crime. Ching v. U. S., 118 Fed. 538, 55 C. C. A. 304; U. S. v. Wilson (D. C.) 60 Fed. 890; Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545.

The decisions agree that certainty to a common intent is all that is necessary. The conspiracy or unlawful combination is the gist of the offense, and certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy. Williamson v. U. S., 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278.

[8, 9] The indictment is sufficient if it advise the defendants of the nature and cause of the accusations against them, with such particularity as to enable them to prepare the defense. The elements which constitute the crime are facts which must be fully and clearly set out. But matters in the nature of evidence need not be alleged, nor the means by which the crime was to be accomplished, unless the act is one which may or may not be criminal according to the circumstances under

which it is done. Mark Yick Hee v. U. S., 223 Fed. 732, 139 C. C. A. 262.

[10] Neither is it necessary, in alleging overt acts in an indictment committed by one of the conspirators, to set forth in what manner the several overt acts tended to effect the purpose of the conspiracy. It is sufficient to allege that the overt acts were done to effect the object of the conspiracy. Houston v. U. S., 217 Fed. 854, 133 C. C. A. 562.

It was said in U. S. v. McCord (D. C.) 72 Fed. 163:

"Any overt act, however slight, intended to effectuate the object of the conspiracy, and whatever its character may be, whether it is itself criminal or perfectly innocent in its nature, is sufficient to fix the offense and to make it indictable."

An examination of the indictments shows that they set forth definitely the names of the alleged conspirators, the conspiracy to commit an offense against the United States, the nature of the offense, the time and place, and the overt acts committed in and for the purpose of executing the same. These, in my opinion, are sufficient to sustain the indictment. Hyde v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

The motions to quash are denied, the demurrers overruled, and the defendants are directed to plead to the indictments.