30 P.(2d) 278

## STATE v. GRAY et al.

### No. 3943.

Supreme Court of New Mexico.

March 13, 1934.

Joe H. Jones, of Dallas, Tex., and C. Melvin Neal and Caswell S. Neal, both of Carlsbad, for appellant Gray.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

BICKLEY, Justice.

Hattie Jones was injured in an automobile collision resulting in her death. The car in which she was riding, being driven by her son, collided with a car in which defendants Burette Gray and A. J. Cloud were riding. Which of the defendants was driving this car is in dispute. The defendant Cloud testified that the defendant Gray was driving. All the other witnesses for the state testified that defendant Cloud was driving.

An information was filed against Gray and Cloud, as defendants, containing the indorsement on the back thereof, "Information for Involuntary Manslaughter," from which we assume that the charge intended to be made and to be pressed was involuntary manslaughter. The charging part of the information is as follows: "That Burette Gray and A. J. Cloud, whose names are to the district attorney otherwise unknown, late of the County of Eddy in the State of New Mexico, on the 5th day of June, in the year of our Lord One Thousand Nine Hundred and Thirty-two, at the County of Eddy, in said State of New Mexico, then and there being, did willfully and unlawfully and feloniously kill and murder one Hattie Jones, a human being; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of New Mexico."

Defendants were convicted "in manner and form as charged in the information."

Cloud has withdrawn his appeal.

The court's instructions show that the trial proceeded upon the theory that the defendants might be found guilty if the jury believed that the deceased was killed by reason of the car under control of defendants colliding with an automobile in which the deceased was a passenger, and that as a result of such collision the deceased was killed, if the jury further believed the defendants were intoxicated and consequently guilty of a misde-

meanor for driving an automobile while under the influence of intoxicating liquor, or if the jury believed that intoxication was not a concurring cause in the death of the deceased, nevertheless the defendant who was driving the automobile, if driven negligently and without due caution and circumspection, should be found guilty if they believed the death of the deceased was the direct and proximate result of such negligent driving. The court instructed the jury as to some of the rules of the road as established by the laws of New Mexico.

By appropriate objections and exceptions, appellant Gray claims to have established that the information does not state facts sufficient to constitute an offense under the laws of this state; (2) that it does not state facts sufficient to constitute the offense of involuntary manslaughter; (3) that it is not direct and certain as to the offense charged, or to the particular circumstances of the offense charged; (4) that the particular offense attempted to be charged is not clearly or distinctly set forth in ordinary or concise language, and in such a manner as to enable a person of common understanding to know what offense is intended to be charged thereby; (5) that the acts or omissions attempted to be charged are not stated with such degree of certainty as would enable the court to pronounce judgment upon a conviction according to the right of the case; (6) that it does not charge the defendant with the commission of any unlawful act not amounting to a felony or lawful act committed in an unlawful manner or without due caution or circumspection, which proximately - resulted

in the death of the deceased; (7) that it is too indefinite and uncertain in its contents to advise the defendant of the offense charged; (8) it states nothing but mere conclusions of the pleading; (9) the allegations that the killing was willful and felonious excludes all elements of involuntary manslaughter.

Appellant cites in support of his contentions New Mexico statutes relating to the requisites of an information as follows:

"*Requisites of indictment or information.* The indictment or information must contain:

"First. The title of the action specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"Second. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (Comp. St. 1929, § 35-4406.)

Section 35-4407, 1929 Compilation, is as follows:

"*Indictment or information must be certain and direct.* The indictment or information must be direct and certain as it regards:

"First. The party charged.

"Second. The offense charged.

"Third. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

Section 35-305, Comp. St. 1929, defines manslaughter as follows:

"*Manslaughter—Voluntary and involuntary.* Manslaughter is the unlawful killing of

a human being without malice. It is of two kinds: 1st. Voluntary: Upon a sudden quarrel or in the heat of passion; 2nd. Involuntary: In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

It is upon this statute that the information is based.

A case strongly relied upon by counsel for appellant is State v. Gesas (1916) 49 Utah, 181, 162 P. 366, 368. The court said: "The defendant is charged with involuntary manslaughter under a statute which merely states the offense in the most general terms. Under that statute a person may be guilty of a large variety of things which may ultimately result in the crime of involuntary manslaughter. The information in this case, we think, comes within subdivision 3 of section 4732, supra, which requires that 'the particular circumstances of the offense' must be stated 'when they are necessary to constitute a complete offense.' As the information now stands, the defendant is not charged with having committed or omitted any particular thing which caused the death of the deceased. Nothing in that regard is alleged save the conclusions of the pleader. The pleader certainly must have had in mind some act or some omission on the part of the defendant which caused, or directly contributed to, the death of the deceased. What is that act or omission? What is the defendant required to meet? What act or omission is he to explain or controvert? We confess that we are entirely unable to discover any particular act or omission that the defendant is called on to defend against."

In the case at bar it might be inquired: If the state was proceeding upon the theory that the killing of the deceased was occasioned by the commission of an unlawful act not amounting to a felony, there is nothing in the information to advise the defendant that the state so intended. If the state intended to ask for a conviction upon the ground that the defendant killed the deceased while committing an unlawful act not amounting to a felony, there are strong reasons to support the view that the state should at least have alleged in general terms the particular circumstances which would show the nature of the unlawful act.

If it had been intended to charge in the information before us that the "act constituting an offense" was the killing of the deceased while defendant was engaged in driving the automobile in an unlawful manner, the question would arise as to what were the "particular circumstances" of the driving which rendered it unlawful.

To drive while under the influence of liquor is a misdemeanor under our statutes. So also it is a misdemeanor to drive in a manner in other respects inhibited by the rules of the road set forth in our statutes. It is unlawful to drive an automobile upon our highways at an excessive rate of speed; also without certain requirements as to lights being complied with. It is required that brakes shall be tested and shall be in good condition. These considerations are mentioned

merely arguendo because the information in the case at bar does not declare that the killing was done in the commission of any unlawful act.

Suppose on the other hand the state expected to secure a conviction because defendant brought about the death of a human being while "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." Under certain circumstances it is prima facie lawful to drive an automobile on a public highway. If it was not intended to charge that the defendants were driving while drunk, but that they were driving in an unlawful manner, the defendants would be entitled to be informed of the "particular circumstances" which constituted the unlawful act.

Or, if the lawful act were being committed "without due caution and circumspection," the defendant would be entitled to be informed of the particular circumstances and acts which are relied upon to show lack of exercise of due caution and circumspection.

The Michigan Supreme Court in People v. Townsend, 214 Mich. 267, 183 N. W. 177, 179, 16 A. L. R. 902, considered the question of whether the charge that the defendant, while operating his automobile while intoxicated, caused the injuries to a human being from which injuries she died, pleaded manslaughter, and, holding that the pleading was sufficient, made the following observation, part of which is quoted with approval in section 518, Joyce on Indictments (2d Ed.): "To make the information for involuntary manslaughter good it must allege that the accused was in the commission of some unlawful act or negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty, and that death resulted therefrom. The distinction between involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results must be kept in mind upon the question of pleading. In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence while doing a lawful act the duty which was neglected or improperly performed must be charged as well as the acts of the accused constituting failure to perform or improper performance."

Mr. Justice Waite, in United States v. Cruikshank, 92 U. S. 542, 557, 23 L. Ed. 588, announced a rule for pleading in criminal cases, which is often quoted as follows: "In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amend. VI. In U. S. v. Mills, 7 Pet. 142 [8 L. Ed. 636], this was construed to mean, that the indictment must set forth the offense 'with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged;' and in U. S. v. Cook, 17

Wall. 174, 21 L. Ed. 538, that 'every ingredient of which the offense is composed must be accurately and clearly alleged.' It is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species—it must descend to particulars.' 1 Arch Cr. Pr. and Pl. 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

In Joyce on Indictments (2d Ed.) § 518, it is said: "In a very recent case the court sustains a demurrer to an indictment charging manslaughter on account of the Knickerbocker Theatre Disaster where the roof of a moving picture theatre fell after a heavy snow storm and the court in a learned opinion points out what should be alleged to show manslaughter by criminal negligence and that the very acts relied on to establish negligence must be specifically set forth."

The author cites United States v. Geare, 54 App. D. C. 30, 293 F. 997, 1000. Although the indictment was rather elaborate in attempting to allege the acts constituting the negligence, the court held the indictment bad, saying: "The negligence, here sought to be charged against these defendants, occurred while they were engaged in the performance of lawful acts. In such cases the indictment must set out in the utmost clearness the facts upon which criminal negligence is predicated. In this the present indictment is lacking. Indeed, it fails to meet any of the established rules of criminal pleading. An indictment should contain every essential fact necessary to clearly define the crime, and the offense sought to be charged should be set out with sufficient accuracy and completeness to support a judgment, either upon demurrer or conviction. It is true that the indictment charges the defendants collectively with undertaking and assuming to construct and erect the building, and to plan, design, fabricate, and furnish materials therefor, and that in so doing they unlawfully, feloniously, and carelessly failed and neglected to perform their separate assumptions and obligations in a careful and skillful manner. But these are merely conclusions of the pleader."

The court cited Ainsworth et al. v. U. S., 1 App. D. C. 518. In that case the indictment charged defendants with omission and neglect of duty, whereby death was caused to one Loftus named in the indictment. The court made the following observations: "It is certainly a fundamental principle in the common law that every party accused of crime is

entitled to have every essential fact that enters into the definition of the offense, set forth in an indictment, with such full and entire accuracy, that the offense may judicially appear to the court in pronouncing judgment thereon, whether upon demurrer or after conviction. This is especially necessary where the act or omission charged as producing the injury is not in itself necessarily unlawful, but only becomes so by its peculiar circumstances and relations to the result that follows, in the natural sequence of events. In such case, every matter of fact essential to show the illegality of the act or neglect must be fully set forth; and the omission of any fact or circumstance necessary to constitute the offense will be fatal. 2 Hawk. Pl. C. 25, Sec. 57; 1 Whart. Cr. Law (7th Ed.), Sec. 285. The indictment must be certain to every intent, and without any intendment to the contrary; and the crime must be charged with such certainty and precision that it may be understood by every one, so that the party may know how to defend against such charge. Hence, facts, and not mere conclusions from facts, or conclusions of law, must be stated. 1 Chitty Cr. Law, 172. Or, as declared by the Supreme Court of the United States, in the recent case of the United States v. Hess, 124 U. S. 486 [8 S. Ct. 571, 31 L. Ed. 516]: 'The general, and, with few exceptions, * * * the universal rule, on this subject, is, that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital.' "

See, also, Kimmel v. State, 198 Ind. 444, 154 N. E. 16; State v. Krueger, 1 W. W. Harr. (31 Del.) 118, 111 A. 614.

Appellant also argues that sections 35-4406, 35-4407, of our statutes, were taken from Oklahoma along with other provisions of chapter 145, Session Laws of 1925, as indicated in State v. Taylor, 33 N. M. 35, 261 P. 808, and that therefore the Criminal Court of Appeals of Oklahoma in Vaughn v. State, 42 Okl. Cr. 376, 276 P. 701, having apparently adopted the rule announced in State v. Gesas, supra, and the argument in People v. Townsend, supra, we should also go along with the Utah and the Michigan courts' view. This argument is strongly persuasive.

In People v. Foster, 60 Misc. 3, 112 N. Y. S. 706, 707, it was decided: "The phrase 'act constituting the crime,' as used in Code Cr. Proc. § 275, requiring an indictment to contain a plain and concise statement of the act constituting the crime, means a statement of the manner in which it is alleged to have been committed."

In 31 C. J., Indictments and Informations, § 239, it is said that: "The particular manner or means employed in the perpetration of the offense generally need not be averred, but if it is the manner in which * * * the act is done that imposes the criminality, * * * they must be alleged." In United States v. United States Brewers' Ass'n (D. C.) 239 F. 163, 165, the court decided: "An indictment

must fully and clearly set out the elements which constitute the crime, but need not allege matters of evidence nor the means by which the crime was to be accomplished, unless the act is one the criminality of which depends on the circumstances under which it was done."

It must be borne in mind that we do not have the short form of indictment or information for manslaughter, prescribed by statute, not pleading the unlawful act, as in Ohio for instance. See, for example State v. Schaeffer, 96 Ohio St. 215, 117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137. The Ohio Statute there cited (Gen. Code Ohio § 13583) is as follows: "In an indictment for murder in the second degree or manslaughter, the manner in which, or the means by which the death was caused need not be set forth. It shall be sufficient in an indictment for murder in the second degree to charge that the defendant did purposely and maliciously, and for manslaughter that the defendant did unlawfully, kill the deceased."

In 30 C. J., Homicide, § 285, it is said: "Where death is alleged to have resulted from a negligent act or omission all the facts and circumstances essential to show the neglect must be set forth."

In State v. Sexsmith, 200 Iowa, 1244, 206 N. W. 100, 101, it was said: "There are crimes which are chargeable in an indictment in the language of the statute. Such are crimes which are specifically defined by the statute. Such rule of pleading has no application to resultant crimes, predicated upon negligence."

The court had under consideration sections of the Iowa Code corresponding with our statutes heretofore quoted, and said: "To charge a defendant in general terms with manslaughter involves a multiplicity of possibilities as to the method by which the manslaughter was committed. Likewise, a charge of gross negligence offers a similar multiplicity of possibilities as to the acts constituting such negligence. * * * Negligence in its generic sense takes on a myriad of forms; but every case of negligence is individualized by its own specific acts. * * * There is no want of harmony between these two sections. Each of them calls for a 'statement of the facts' constituting the alleged offense. It is argued that the defendant knew what was intended, because he was there and knew his own acts and had no need of specifications of them. This argument would dispense with the necessity of any allegations in an indictment. * * * It is the function of an indictment to individualize the particular case. This is done by setting forth the particular circumstances of the particular case so far as they disclose the wrongful acts complained of."

As the information fails to apprise us of the particular acts or omissions relied upon as constituting the crime of involuntary manslaughter, it would be profitless to discuss the other questions presented on this appeal.

The judgment is reversed, and the cause remanded, with directions to the trial court to sustain the demurrer to the information, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.