STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued February 15, 1916—Decided June 6, 1916.

1. Although the Morris Canal and Banking Company is not discharged by its lease to the Lehigh Valley Railroad Company from the obligation to maintain bridges over the canal, imposed by its charter, the lessee took a lease in perpetuity which is equivalent to a title so far as concerns this obligation, and thereby assumed the public burden of maintaining bridges.

2. The obligation under the charter of the Morris Canal and Banking Company to maintain bridges over the canal is not limited by the necessities of such traffic as existed at the date of its charter, but extends to a case where traffic is increased over a pre-existing highway.

3. The operation of motor vehicles and the improvement of a highway by macadamizing does not affect the charter obligation to maintain bridges over the Morris canal.

On error to the Morris Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the state, *Charlton A. Reed.*

For the defendant, *Charles B. Bradley* (*Collins & Corbin* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The defendant is charged with maintaining an improper bridge over the Morris canal so as to obstruct and narrow a highway. While the indictment does not in so many words charge a violation of the defendant's statutory duty, which measures the defendant's obligation (*State* v. *Lackawanna Railroad Co.*, 84 *N. J. L.* 289), it nevertheless avers facts which amount to a violation of the statutory duty, and is sufficient. *State* v. *Lackawanna Railroad Co.*, 86 *Id.* 62. The averments of the indictment may have been thought important because the statutory duty is imposed by the charter of the Morris Canal and Banking Company, while the defendant is only lessee of the property of that company. In our opinion this makes no difference in the obligation of the lessee. *New York and Greenwood Lake Railroad Co.* v. *State*, 50 *Id.* 303; *Meyer* v. *Harris*, 61 *Id.* 83. Although the Morris Canal and Banking Company is not discharged by the lease from the obligation imposed by the charter (*Ryerson* v. *Morris Canal and Banking Co.*, 71 *Id.* 381), the lessee took a lease in perpetuity which is equivalent to a title so

far as concerns this obligation, and thereby assumed the public burden of maintaining bridges. If that were not the legal situation the evidence shows that the defendant in fact rebuilt the bridge. If unauthorized by statute and so built as to obstruct the highway, the bridge would be a public nuisance for which the defendant would be criminally responsible. As against this objection, the indictment and conviction must be sustained.

A greater difficulty arises out of the contention of the defendant that the duty is limited and defined by conditions as they existed at the time the charter was granted. There is undoubtedly a difference between the obligation imposed by the charter of the canal company as construed in *Morris Canal and Banking Co.* v. *State,* 24 *N. J. L.* 62, and the obligation of a railroad company as generally understood since the decision of *Central Railroad Co.* ads. *State,* 32 *Id.* 220, and expressed by Mr. Justice Dixon in his concurring opinion in *Morris and Essex Railroad Co.* v. *Orange,* 63 *Id.* 252, 273. Under Chief Justice Green's decision the canal company was not compelled by their charter to maintain bridges over the canal where it was crossed by a highway laid out subsequent to the construction of the canal. The facts of the present case are perhaps not entirely clear in this respect. There seems to be no doubt that the obstruction is due to the fact that a new road has been laid out and macadamized which has greatly increased the travel over the bridge. This new road seems to begin near the end of the bridge, but it is said in the brief for the plaintiff in error that the inconvenience complained of arose from the use of the southern end of the old road in conjunction with the entirely new road on the north side of the bridge. This seems to mean, as was probably the case, that the new road connected with the old road at the bridge. If this is so, we have the case of traffic increased by the new road but passing over the old road at the entrance upon the bridge. This is only the ordinary case where traffic is increased by the development of the country or the growth of a town. To such a case the rule of Morris Canal and Banking Co. *v.* State is not applicable. Indeed, the stress

of the argument was rested on other grounds. It is urged that the operation of motor vehicles and the improvement of the highway by macadamizing has so changed the nature and use of the highway that the obligation of the canal company no longer exists. This very broad contention is elsewhere qualified by the statement that the company's obligation to maintain the bridge has terminated at least with regard to traffic by motor vehicles. Stated more moderately, the contention is that the duty of the defendant is limited and defined by conditions as they existed at the time the charter was granted in 1824. We find nothing in Morris Canal Co. *v.* State to justify this argument. That case turned upon the peculiar language of the charter in blending in the same provision roads and farms and it was said that it never could have been the design of the legislature to require that in all future time, whenever a landholder should choose to unite two tracts of land, lying on opposite sides of the canal, into one farm the company should build and maintain a bridge for his accommodation. To avoid this absurd result, the court was obliged to hold that the obligation did not apply to a highway laid out subsequently to the construction of the canal. As to highways previously laid out, the obligation was to make good and sufficient bridges and to keep the same in repair, so as to prevent any inconvenience in the usage of the road by reason of the canal crossing it. "Usage of the road" necessarily means any legal usage and as the duty was imposed, as Chief Justice Green recognized, in terms of the future, it must mean any usage of the road that shall become lawful. The charter looks to the legality of the usage, not to the amount or density of the traffic. It cannot be that because our roads are made better by macadamizing on either side of a canal bridge, that the public are to lose the substantial benefit intended by the legislature authorizing the expenditure of public money, by reason of a bridge adapted only to the state of traffic nearly a century ago. The rule of Central Railroad Company *ads.* State applies. The company is subject to a continuing duty measured by circumstances. A bridge, as Chief Justice Beasley said, at one time adequate,

might from an increase of business or population become totally inadequate, and a provision which at one juncture would be a discharge of the duty, would at another, amount to its infraction. It is true that what the statute protects is the usage of the road so that it may not become inconvenient. It may be that uses may be found for our highways so onerous that they will cease to be roads in any proper sense. This result in our judgment is not produced by their use for motor vehicles, a use recognized by legislation as a proper use not only for urban streets but for country roads. If the operation of electric cars with poles and wires in a public street is within the ordinary public easement (*Halsey* v. *Rapid Transit Street Railway Co.*, 47 *N. J. Eq.* 380; *Montclair Military Academy* v. *New Jersey Street Railway Co.*, 70 *N. J. L.* 229), surely the operation of motor vehicles is.

We find no error and the judgment is affirmed.