423 A.2d 413

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**McILWAIN SCHOOL BUS LINES, INC.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed Dec. 12, 1980.

D. Gerard Long, District Attorney, Ebensburg, for Commonwealth, appellant.

William P. Kelly, Johnstown, for appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal by the Commonwealth from an order quashing an information. The principal issue is whether a private corporation may be held criminally liable for homicide by vehicle.[1] On April 3, 1978, a school bus owned by the McIlwain School Bus Lines, Inc. [hereinafter, the corporation] and operated by one of its employes, ran over and killed 6–year–old Lori Sharp; she had just gotten off the bus and was walking in front it when she was run over. On May 26, 1978, the corporation was charged with homicide by vehicle. The corporation waived its right to a preliminary hearing, but subsequently filed a motion to quash the information against it. One ground of the motion was that the statute defining the offense of homicide by vehicle did not apply where the particular regulation allegedly violated involved the equipment required on a vehicle (its front and rear view mirrors) and not the operation of the vehicle. A second ground of the motion was that by definition, the

1. Act of June 17, 1976, P.L. 162, No. 81, § 1, 75 Pa.C.S.A. § 3732. This statute has been held constitutional in *Commonwealth v. Burt*, 490 Pa. 173, 415 A.2d 89 (1980) (statute not unconstitutionally vague), and *Commonwealth v. Field*, 490 Pa. 519, 417 A.2d 160 (1980) (statute does not unconstitutionally impose criminal liability without fault). As regards the proof required under § 3732, *see Commonwealth v. Nay*, 281 Pa.Super. 226, 421 A.2d 1231 (1980).

offense could only be committed by a natural person, not by a corporation. By order filed on March 16, 1979, the lower court granted the corporation's motion to quash. The court did not rule on the first ground of the motion. Instead, the court held, *sua sponte*, that the information issued against the corporation was insufficient. The court did not rule on the second ground of the motion, and held, as argued by the corporation, that the offense of homicide by vehicle could not be committed by a corporation.

1

The information reads:

The District Attorney of Cambria County by this information charges that on or about the 3rd day of April, 1978, McIlwaine [*sic*] School Bus Lines, Inc. the Defendant(s) above named in the County aforesaid and within the jurisdiction of this Court did being the owner of school bus No. 64 bearing Pa. registration SA27583 and being operated by Terry L. Rex, did unintentionally cause the death of Lori Sharp, age 6, when the operator of the bus did run over her with the bus when she got off the bus at Corinne St., Johnstown, Pa., and was crossing in front of the bus, all of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

The lower court held the information "insufficiently drawn to appraise the defendant of the nature and cause of the accusation," slip op. at 5, assigning three reasons for this conclusion: 1) the information failed to state what law the corporation had allegedly violated; 2) it failed to state whether that law applied to the operation or use of a vehicle or to a traffic regulation; and 3) it failed to state whether the alleged violation of law was the cause of Lori Sharp's death. As the lower court stated, "The above three failures [refer to] essential elements of the offense. . . ." Slip op. at 5. The statute provides:

Any person who unintentionally causes the death of another person while engaged in the *violation of any law of the Commonwealth or municipal ordinance* applying to

4

*the operation or use of a vehicle or to the regulation of traffic* is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is *the cause of death.* 75 P.S. § 3732 (emphasis added).

Pennsylvania practice requires that an information contain "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint" ... Pa.R.Crim.P. 225(b)(5).[2] This requirement is based on Article I, Section 9, of the Pennsylvania Constitution, which provides that "[i]n all criminal prosecutions the accused hath a right ... to demand the nature and cause of the accusation against him." This provision in turn is founded on principles of fairness to the accused:

In a criminal prosecution it is imperative that a defendant be given clear notice of the charges against him . . . . A defendant should not have to guess which charges have been placed against him. If the charges in an indictment are not clear and explicit a defendant cannot properly defend against them.

*Commonwealth v. Wolfe,* 220 Pa.Super. 415, 419–420, 289 A.2d 153, 155 (1972).

*See also Commonwealth v. Brown,* 229 Pa.Super. 67, 323 A.2d 845 (1974).

If one were to look only at the information, one might conclude that it did indeed fail to comply with Pa.R.Crim.P. 225(b)(5), in particular because of its failure to state "which law of the Commonwealth or municipal ordinance" the accused corporation had allegedly violated. In this regard, however, it should be noted that other jurisdictions have split on the issue of whether an indictment or information under a homicide by vehicle statute must contain a specific citation to the law or ordinance allegedly violated. *See e. g., People v. Jones,* 2 Ill.App.3d 575, 277 N.E.2d 144 (1971); *People v. Mowen,* 109 Ill.App.2d 62, 248 N.E.2d 685, *cert. denied,* 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1969); *State v. Duncan,* 130 Mont. 562, 305 P.2d 761 (1957); *State v.*

**2.** The same is so of an indictment. Pa.R.Crim.P. 213(a)(5).

*Ashton*, 175 Kan. 164, 262 P.2d 123 (1953); *State v. Forler*, 38 Wash.2d 39, 227 P.2d 727 (1951); *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480 (1946); *Gutierrez v. State*, 44 Ariz. 114, 34 P.2d 395 (1934); *Williams v. State*, 161 Miss. 406, 137 So. 106 (1931); *State v. Millin*, 318 Mo. 553, 300 S.W. 694 (1927): indictment for homicide caused by automobile accident sufficient even though written in terms of statute without alleging factual details. *But see State v. Gilbert*, 89 N.H. 134, 194 A. 728 (1937); *State v. Gray*, 38 N.M. 203, 30 P.2d 278 (1934); *People v. Maki*, 245 Mich. 455, 223 N.W. 70 (1929); *Kimmel v. State*, 198 Ind. 444, 154 N.E. 16 (1926): indictment for homicide caused by automobile accident insufficient for failing to allege facts giving rise to defendant's criminal liability.

In Pennsylvania the courts have still to decide whether an information or indictment charging homicide by vehicle must contain a specific citation to the law of the Commonwealth or municipal ordinance allegedly violated. Nor need we make that decision now. Instead of filing a motion to quash the information on the ground that it failed to comply with Pa.R.Crim.P. 225(b)(5), the corporation filed a request for a bill of particulars, asking that the Commonwealth "[p]lease specify the law of this Commonwealth or municipal ordinance which the Defendant was violating which caused the death of Lori Sharp." The Commonwealth answered as follows:

> Sections 4551, 4552 of the Pennsylvania Vehicle Code require the Department of Transportation to promulgate rules and regulations pertaining to the equipment required on school buses.

> Specifically the rules and regulations require that a mirror be placed on the front of the bus which will permit the operator to see any pedestrian in front of the bus. This mirror was missing.

> Also the bus is required to be equipped with a rear view mirror to provide the operator with a proper view to the rear and side of the bus.

> The rear view mirror was not properly positioned to afford the operator a proper view of the area.

(R.R. 25)[3]

Thus the Commonwealth's answer to the corporation's request for a bill of particulars responded to the three failures ascribed to the information by the lower court: it identified the law of the Commonwealth allegedly violated; in doing so, it made plain that the law applied to the operation or use of the corporation's vehicle, and not to the regulation of traffic; and although it did not say in so many words that the alleged violation had caused Lori Sharp's death, when read in light of the information, it said so plainly enough.

We recognize that it is arguable that despite the Commonwealth's answer to the corporation's request for a bill of particulars, the information remained insufficient. In *Commonwealth v. Hershman*, 171 Pa.Super. 134, 90 A.2d 314 (1952), it is said that

[a] motion for a bill of particulars does not question the sufficiency of an indictment but rather assumes its validity. When filed, such bill of particulars does not become a part of the indictment. It therefore cannot remedy by way of amendment a fatal defect in an indictment which charges no offense under the law.

*Id.*, 171 Pa.Super. at 139, 90 A.2d at 317.

3. 75 Pa.C.S.A. § 4551 provides:
(a) General rule.–All school buses and all other vehicles used in the transportation of school children, owned by or under contract with any school district or parochial or private school, shall conform to standards prescribed by the department. Regulations shall be promulgated by the department governing the safe design, construction, equipment and operation of vehicles engaged in the transportation of school children.
(b) Violation and penalty.–No person shall operate or permit the operation of a vehicle of a type specified in this subchapter which is not in compliance with the requirements of this subchapter or applicable regulations issued under this subchapter. Violation of this section constitutes a summary offense punishable by a fine of not less than $50 nor more than $100.
Act of June 17, 1976, P.L. 162, No. 81 § 1, eff. July 1, 1977, 75 Pa.C.S.A. § 4551.
75 Pa.C.S.A. § 4552(e) provides:
Visibility.–Every school bus shall be designed and equipped so as to provide the driver with an unobstructed view of any pedestrian in proximity to the vehicle.

In support of this proposition, this court cited *Common-wealth v. B. & O. R.R. Co.*, 223 Pa. 23, 72 A. 278 (1909). In that case, the indictment charged the defendant railroad with maintaining its track across a highway and frequently passing and repassing its trains over the track. The railroad's motion to quash the indictment was overruled, the lower court and this court being of the opinion that if the defendant was dissatisfied with the indictment, its remedy was to request a bill of particulars. Reversing, the Supreme Court said that:

> [t]his [a bill of particulars] is never a remedy for an indictment so defective that it charges no offense: 1 Bishop's New Criminal Procedure, sec. 646. A bill of particulars cannot give life to what was dead when it left the grand jury . . . [It] can never take the place of what must affirmatively appear on the face of an indictment to which the accused must plead.

223 Pa. at 26–27, 72 A. at 278–279.

Here, however, as has been noted, the corporation did not move to quash the information on the ground that it failed to give sufficient notice of the offense charged and therefore failed to comply with Pa.R.Crim.P. 225(b)(5). Instead, having obtained a bill of particulars, the corporation moved to quash the information on the basis of information in the bill of particulars, alleging in paragraph (1) of its motion to quash as follows:

> (1) The offense charged is the failure of the Defendant to have a proper mirror attached to a school bus, which is a violation of a regulation of the Department of Transportation relative to the equipment necessary for vehicles used in the transportation of children. This failure to provide a proper mirror is a violation of Section 4551 of the Motor Vehicle Code, is a summary offense and punishable by a fine of not less than $50.00 nor more than $100.00. Defendant submits that a violation of a departmental regulation is not a violation of any law of the Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic,

and is, therefore, not an offense or violation included in the offense of homicide by vehicle. We submit that the offense of homicide by vehicle was intended to cover moving or operational violations such as speeding, violation of red light or stop sign provisions and reckless driving, and it was not intended to provide for an alleged minor equipment violation which is a summary offense under the Motor Vehicle Code, and has nothing to do with the method of operating or using the vehicle. Defendant admits that the Vehicle Code does define "person" to include a corporation and Defendant could properly have been charged with a summary offense under Section 4551.

In these circumstances it was error for the lower court, *sua sponte*, to quash the information as insufficient. If the corporation was not claiming–and it was not–that the information failed to give it sufficient notice of the offense charged, there was no call upon the court to find insufficient notice. *Commonwealth v. B. & O. R.R. Co., supra*, is not in point, for there the defendant did move to quash the indictment as insufficient. Here, by quashing the information *sua sponte*, the lower court deprived the Commonwealth of the opportunity to argue that in fact the information was sufficient–in other words, to argue in support of the position adopted in some jurisdictions, that the information need not contain a specific citation to the law or ordinance allegedly violated.

What the lower court should have done was to respond to the argument made in paragraph (1) of the corporation's motion to quash, that "the failure . . . to have a proper mirror attached to a school bus . . . is not a violation of any law of the Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, and is, therefore, not an offense or violation included in the offense of homicide by vehicle." Since the corporation has repeated this argument to us, we shall consider it.

The corporation concedes that if in fact it failed to provide proper mirrors for its school bus, as required by 75 Pa.C.S.A. § 4551, it committed a violation of law. It con-

tends, however, that the violation was a summary offense– which is true, *see* 75 Pa.C.S.A. § 4551(b)–and that:

> the offense of homicide by vehicle was intended to cover moving or operational violations such as speeding, violation of red light or stop sign provisions, or reckless driving and it was not intended to provide for an alleged mirror equipment violation which is a summary offense under the Motor Vehicle Code, and has nothing to do with the method of operation or using a vehicle.

Appellee's Brief at 2–3.

This argument is without any merit. The definition of homicide by vehicle refers to "*the* violation *any* law." 75 Pa.C.S.A. § 3732 (emphasis added). We see no basis for reading this as meaning, "*only* violations that rise higher than summary offenses." Nor do we see any basis for the contention that the absence of a mirror "has nothing to do with the method of operating or using" a school bus. Anyone who has tried to operate a motor vehicle that has no mirror, or no properly adjusted mirror, knows otherwise.

### 2

The criminal law has not always regarded a corporation as subject to criminal liability.[4] Indeed, it was once widely accepted that a corporation was incapable of committing a criminal offense:

> This doctrine of nonliability for crime arose from the theory that a corporation, being an intangible entity, [*New York Cent. & H. River R. Co. v. United States,* 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; *Sutton's Hospital Case,* 10 Coke 23, 32], could neither commit a crime nor be subjected to punishment, because any illegal act of a corporate agent was done without authority of the corporation and ultra vires. [*Music Box, Inc. v. Mills,* 10 La.App. 665, 121 So. 196]

**4.** *See generally,* Lee, Corporate Criminal Liability, 28 Columbia L.Rev. 1, 181 (1928); Edgerton, Corporate Criminal Responsibility, 36 Yale L.J. 827 (1927); Frances, Criminal Responsibility of the Corporation, 18 Ill.L.Rev. 385 (1924); Canfield, Corporate Responsibility for Crime, 14 Columbia L.Rev. 469 (1914); Note, 23 University of Pittsburgh L.Rev. 172 (1961).

10 Fletcher Cyc.Corp. § 4942 (Perm. ed. 1978) p. 620. Today, however, it is generally recognized that a corporation may be held criminally liable for criminal acts performed by its agents on its behalf. *See, e.g., United States v. Wise*, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962) (conspiracy, violation of Sherman Act); *United States v. Johns–Manville Corporation*, 231 F.Supp. 690 (E.D.Pa.1964) (antitrust, conspiracy); *People v. Schomig*, 74 Cal.App. 109, 239 P. 413 (1925) (violation of legislation regulating real estate brokerages); *West Valley Estates, Inc. v. Florida*, Fla.App., 286 So.2d 208 (1973) (violation of statute proscribing dredging of lands); *Southern Ry. Co. v. State*, 125 Ga. 287, 54 S.E. 160 (1906) (violation of state penal code re: operation of passenger cars); *State v. Adjustment Dept. Credit Bureau, Inc.*, 94 Idaho 156, 483 P.2d 687 (1971) (extortion); *People v. Duncan*, 363 Ill. 495, 2 N.E.2d 705 (1936) (violation of Motor Fuel Tax Act); *Golden Guernsey Farms v. State*, 223 Ind. 606, 63 N.E.2d 699 (1945) (violation of Uniform Food, Drug & Cosmetic Act); *G. & H. Cattle Co. v. Commonwealth*, 312 Ky. 315, 227 S.W.2d 420 (1950) (nuisance, pollution); *Telegram Newspaper Co. v. Commonwealth*, 172 Mass. 294, 52 N.E. 445 (1898) (criminal contempt); *State v. Worker's Socialist Pub. Co.*, 150 Minn. 406, 185 N.W. 931 (1921) (criminal syndicalism); *Department of Health of State of New Jersey v. Borough of Fort Lee*, 108 N.J.Eq. 139, 154 A. 319 (1931) (criminal contempt); *People v. Canadian Fur Trappers' Corp.*, 248 N.Y. 159, 161 N.E. 455 (1928) (larceny); *Hardeman King Co. v. State*, 29 Okl.Cr. 319, 233 P. 792 (1925) (violation of laws re: selling agricultural seeds); *Commonwealth v. American Baseball Club of Philadelphia*, 290 Pa. 136, 138 A. 497 (1927) (violation of Sunday laws); *Love v. Nashville Agricultural & Normal Institute*, 146 Tenn. 550, 243 S.W. 304 (1922) (nuisance); *Postal Tel. Cable Co. v. City of Charlottesville*, 126 Va. 800, 101 S.E. 357 (1919) (violation of intrastate telegraph laws); *Vulcan Last Co. v. State*, 194 Wis. 636, 217 N.W. 412 (1928) (attempt to influence votes of employees in referendum election).

As early as the 1860's Pennsylvania courts have recognized that a corporation may be subject to criminal liability. Corporations in Pennsylvania have been indicted or convicted of maintaining public nuisances,[5] unlawful manufacture or possession of intoxicating liquors,[6] violation of Sunday laws,[7] and violation of the Unlawful Collection Agency Practices Act.[8] For a time, the Pennsylvania courts were unwilling to extend corporate criminal liability to crimes involving specific intent or homicide. In *Commonwealth v. Punxsutawney*, 24 Pa.C.C. 25, 48 Pittsb.Leg.J. 42 (1900), the court of common pleas of Jefferson County refused to hold a street railway company criminally liable for the crime of assault in ejecting a passenger:

> Some courts have shown a tendency to enlarge on the criminal liability of corporations but no court has gone as far as we are urged to go in this case. Hence, not a single case is to be found to sustain this indictment. We should make haste slowly when it is in the direction of holding either an individual or a corporation criminally liable for a crime committed by an employee without his or its knowledge or consent. Moreover, the criminal act here alleged is so far *ultra vires* as to contravene all the accepted rules in the criminal law for making it the act of the principal. 48 P.L.J. at 42.

And in *Commonwealth v. Peoples Natural Gas Co.*, 102 P.L.J. 348 (1954), the court of common pleas of Allegheny County granted a corporation's motion to quash an indictment charging involuntary manslaughter, then the common

---

5. *Commonwealth v. Lehigh Valley R. R.*, 165 Pa. 162, 30 A. 836 (1895); *Pittsburgh, V. & C. Ry. Co. v. Commonwealth*, 101 Pa. 192, 12 W.N.C. 280 (1882); *Northern Central R. Co. v. Commonwealth*, 90 Pa. 300, 9 W.N.C. 129 (1879); *Delaware Division Canal Co. v. Commonwealth*, 60 Pa. 367, 100 Am.Dec. 570 (1869).

6. *Commonwealth v. Weiler*, 84 Pa.Super. 481 (1925); *Commonwealth v. Liberty Prod. Co.*, 84 Pa.Super. 473 (1925).

7. *Commonwealth ex rel. Woodruff v. American Baseball Club of Phila.*, 290 Pa. 136, 138 A.2d 497 (1927).

8. *Commonwealth v. U. S. Commercial Services, Inc.*, 179 Pa.Super. 395, 116 A.2d 745 (1955).

law offense; the court reasoned that the phrase, "the killing of another," implied that the killer had to be of the same nature as the killed ("another"). Courts in other jurisdictions, however, have abandoned this limitation.

For example, the Supreme Court of New Jersey has held that a corporation may be held criminally liable for involuntary manslaughter. In *State v. Lehigh Valley R. Co.*, 90 N.J.L. 372, 103 A. 685 (1917), in denying a corporation's motion to quash an indictment for involuntary manslaughter, the court said:

> It has long been settled in this state that a corporation aggregate may in a proper case be held criminally for acts of malfeasance as well as for nonfeasance. *State v. Morris and Essex Railroad Co.*, 23 N.J.Law 360; *State v. Passaic County Agricultural Society*, 54 N.J.Law 260, 23 Atl. 680. So well settled is the general rule that in the later cases it has not even been questioned. *States [State] v. Erie Railroad Co.*, 83 N.J.Law 231, 84 Atl. 698; *Id.* 84 N.J.Law 661, 87 Atl. 141, 46 L.R.A. (N.S.) 117, *State v. Lehigh Valley Railroad Co.*, 89 N.J.Law 48, 97 Atl. 786; *Id.* 90 N.J.Law 340, 100 Atl. 167.

90 N.J.Law at 373, 103 A. at 685.

The court went on to say that "[w]e can think of no reason why it [the corporation] should not be held for the criminal consequences of its negligence or its nonfeasance." 90 N.J.Law at 374, 103 A. at 686. In *United States v. Van Schaick et al.*, 134 F. 592 (C.C.S.D.N.Y.1904), the court held that a corporate owner of a steam vessel could be guilty of manslaughter for "fraud, connivance, misconduct or violation of the law" resulting in loss of life. The charge was that as owner, the corporation had failed to equip the vessel with life preservers and fire fighting equipment. In *People v. Ebasco Services, Incorporated et al.*, 77 Misc.2d 784, 354 N.Y.S.2d 807 (1974), the Supreme Court of New York (Queens County) held that a corporation could be guilty of negligent homicide. The court held that although the statute's use of the word "person" in referring to the victim of a homicide naturally meant a human being, the statute did not

require that the "person" committing the act of homicide also be a human being:

> There is, however, no manifest impropriety in applying the broader definition of "person" to a corporation in regard to the commission of a homicide particularly in view of the statement by the Court of Appeals in *People v. Rochester Railway & Light Co.* (supra) [9] that the Legislature is empowered to impose criminal liability upon a corporation for a homicide. Accordingly, the court concludes that although a corporation cannot be the victim of a homicide, it may commit that offense and be held to answer therefor.

77 Misc.2d at 787, 354 N.Ÿ.S.2d at 811.

The law of Pennsylvania has developed in a manner consistent with these New Jersey and New York decisions. With the enactment of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 *et seq.*, eff. June 6, 1973, 18 Pa.C.S.A. § 101 *et seq.*, the criminal liability of corporations was codified, as follows:

> **(a) Corporations generally.**--A corporation may be convicted of the commission of an offense if:
>
> > (1) the offense is a summary offense or the offense is defined by a statute other than this title in which a legislative purpose to impose liability on corporations plainly appears and the conduct is performed by an agent of the corporation acting in behalf of the corporation within the scope of his office or employment, except that if the law defining the offense designates

---

**9.** In *People v. Rochester Railway & Light Co.*, 195 N.Y. 102, 107, 88 N.E. 22, 24 (1909), the New York Court of Appeals held that there was insufficient evidence of the legislature's intent to impose corporate criminal liability under a particular state statute. However, the court added:

> Within the principles thus and elsewhere declared, we have no doubt that a definition of certain forms of manslaughter might have been formulated which would be applicable to a corporation, and make it criminally liable for various acts of misfeasance and nonfeasance when resulting in death, and amongst which very probably might have been included conduct in its substance similar to that here charged against the respondent.
> *Id.*

the agents for whose conduct the corporation is accountable or the circumstances under which it is accountable, such provisions shall apply;

(2) the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or

(3) the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

**(b) Corporations, absolute liability.**—When absolute liability is imposed for the commission of an offense, a legislative purpose to impose liability on a corporation shall be assumed, unless the contrary plainly appears. 18 Pa.C.S.A. § 307(a) and (b).

We recently had occasion to apply this provision, in *Commonwealth v. J. P. Mascaro and Sons, Inc.*, 266 Pa.Super. 8, 402 A.2d 1050 (1979), where we held that under subsection (a)(3) of section 307, a corporation could be convicted of theft by deception, deceptive business practices, and unsworn falsification to authorities arising out of false reports pertaining to rubbish hauled pursuant to a contract between the corporation and a county. Cases such as *Commonwealth v. Punxsutawney, supra,* and *Commonwealth v. Peoples Natural Gas Co., supra,* therefore no longer have any precedential value.

When section 307 of the Crimes Code is applied to the present case, it is apparent that the critical words are that "[a] corporation may be convicted of the commission of an offense if: (1) the offense is . . . defined by a statute other than this title in which a legislative purpose to impose liability on corporations plainly appears . . . ." 18 Pa.C.S.A. § 307(a)(1) Here, the offense–homicide by vehicle–is "defined by a statute other than [the Crimes Code]"; it is defined by the Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S.A. § 3732. The question that we must decide, therefore, is whether from

that definition "a legislative purpose to impose liability on corporations plainly appears."

■ The statute provides that homicide by vehicle may be committed by *"[a]ny person* who unintentionally causes the death of another person while engaged in the violation of . . . . [etc.]." (Emphasis added.) Section 102 of the Vehicle Code defines "person" as "[a] natural person, firm, co–partnership, association or corporation." 75 Pa.C.S.A. § 102. It therefore "plainly appears" that homicide by vehicle may be committed by a corporation.

This conclusion is made even more plain by the opening paragraph of Section 102, which provides:

Subject to additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this title, the following words and phrases when used in this title shall have, unless the content clearly indicates otherwise, the meanings given to them in this section[.]

75 Pa.C.S.A. § 102.

"Person" is one of the "following words" thus referred to. There are no "additional definitions" of "person" in Section 3732, defining homicide by vehicle. Therefore, "unless the content [of Section 3732] *clearly indicates otherwise* [emphasis added]," the meaning given "person" in Section 3732 shall be the meaning given it in Section 102, *i.e.,* as including a corporation.

The lower court acknowledged that Section 102 defined "person" as including a corporation, but held, nevertheless, that as used in Section 3732, "person" did not include a corporation. Said the court:

If "person" was to include a corporation, Section 3732 semantically and grammatically should have read "any person who or <u>which</u> unintentionally causes the death . . . ." In modern usage <u>who</u> refers to <u>actual persons</u> (human beings). <u>Which</u> refers to the unnatural, artificial or inanimate as a corporation.

(Webster's Collegiate 5th Edition Dictionary).

The Latin "qui" means <u>who</u> referring to the natural or human, and "quod" means <u>which</u> referring to the unnatural, artificial or inanimate. (The New Century Dictionary Foreign Words and Phrases) (Court's underscoring.)
Slip op. at 3.

We are not persuaded by this reasoning. Initially, it may be noted that the argument from Latin is not persuasive, for reference to another language would have shown that the word for "who" and the word for "which" may be the same.[10] Nor is the argument from grammar persuasive; indeed, it cuts just the other way. The phrase, "any person who or which," is not only extremely awkward but sounds wrong, for in ordinary usage, "person" refers only to a natural person and therefore takes only "who," not "which." Accordingly, no legislative draftsman wants to resort to the phrase, "any person who or which." Instead, the draftsman will make a choice. One choice is to avoid definitions. With respect to the Vehicle Code, that would mean that throughout the statute there would appear the phrase, "Any natural person, firm, copartnership, association or corporation who or which . . . . [does one of the many acts proscribed by the Code]." This is clear but cumbersome. A second choice, therefore, is to avoid being cumbersome by using one word instead of many, and still be clear by giving that one word a definition that includes the many. This is the choice usually made when the statute in question is long and divided into many sections.[11] Here, the draftsman of the Vehicle Code

10. C'est ma cousine *qui* demeure à Paris.
Voici un autre autobus *qui* arrive.
C'est une jeune fille *que* je connaissais quand j'avais dix ans.
Voice la cravate *que* je cherchais.

11. *See, e.g.,* the Uniform Commercial Code:
"Person" includes an individual or an organization (Section 1–102).
12A § 1–201(30)
In this act [Uniform Commercial Code] unless the context otherwise requires
(a) words in the singular number include the plural, and in the plural include the singular;
(b) words of the masculine gender include the feminine and the neuter, and when the sense so indicates words of the neuter gender may refer to any gender.

made this second choice. Having done so, he wished to be grammatical, and not offend the reader with an awkward phrase. He therefore said, "Any person who . . .," knowing that by reference to the definitions in Section 102, the reader could learn what "person" referred to, and did not say, "Any person who or which . . .," which would not only be awkward and sound wrong, but because of Section 102, was unnecessary.

Other jurisdictions have similarly applied criminal statutes defining the word "person" as including corporation. For example, in *Vulcan Last Co. v. State*, 194 Wis. 636, 217 N.W. 412 (1928), the Supreme Court of Wisconsin held that a corporation is liable to prosecution under a statute prohibiting any "person" from attempting to influence a voter, where the statute provided that "person" included a corporation. In *State v. Workers' Socialist Pub. Co.*, 150 Minn. 406, 185 N.W. 931 (1921), the Supreme Court of Minnesota held that a corporation was criminally liable under a statute prohibiting "any person" from advocating violence to gain political ends, where the statute provided that the word "person" included a corporation. *See also State v. Adjustment Dept. Credit Bureau, Inc.*, 94 Idaho 156, 483 P.2d 687 (1971); *Paragon Paper Co. v. State*, 19 Ind.App. 314, 49 N.E. 600 (1898).

The lower court also gave the following reasons for its decision:

The Homicide by Vehicle Section 3732 nowhere contains the word corporation: no Pennsylvania courts have applied this section to corporations; the penalty of the section providing jail is not corporately oriented; the revocation of one's license is not corporately applicable; and the section (as with the entire Vehicle Code Serious Offense Section 3731 to 3734, inclusive) is strictly natural person solely operational driver oriented.

12A § 1–102(5).
and the Uniform Partnership Act:
"Person" includes individuals, partnerships, corporations, and other associations.
59 P.S. § 2.

18

Slip op. at 2.

It is true that Section 3732 does not use the word "corporation." However, given the definition of the word "person", there is no need for it to do so. It is also true—at least so far as we know—that no court in Pennsylvania has applied Section 3732 to a corporation; the present case appears to be of first impression. However, given the fact that the section did not become effective until July 1, 1977, the fact that no case other than this one has been brought against a corporation for homicide by vehicle is hardly conclusive proof that the section may not be so applied. Neither are we persuaded by the next two reasons of the lower court— that since a corporation cannot be put in jail or have its license revoked, Section 3732 does not apply to corporations.

The offense of homicide by vehicle is a misdemeanor of the first degree. 75 Pa.C.S.A. § 3732. It is true that one of the punishments that may be imposed for committing a misdemeanor of the first degree is a term of imprisonment:

A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than:

(1) Five years in the case of a misdemeanor of the first degree.

18 Pa.C.S.A. § 1104.

It is also true that another possible punishment for homicide by vehicle is the revocation of one's driving license:

The department shall revoke the operating privilege of any driver for one year upon receiving a certified record of the driver's conviction of any of the following offenses:

... Section 3732 (relating to homicide by vehicle).

75 Pa.C.S. § 1532(a)(3).

However, a third possible punishment is the imposition of a fine:

A person who has been convicted of any offense may be sentenced to pay a fine not exceeding:

(1) . . . .

(2) . . . .

(3) $10,000, when the conviction is of a misdemeanor of the first degree.

18 Pa.C.S.A. § 1101.

Where alternate punishments are provided for a crime, the court may in appropriate circumstances impose the fine only:

*Fine only.*–The court may, as authorized by law, sentence the defendant only to pay a fine, when, having regard to the nature and circumstances of the crime and to the history and character of the defendant, it is of the opinion that the fine alone suffices.

18 Pa.C.S. § 1326(a).

In *United States v. Hougland Barge Line, Inc.*, 387 F.Supp. 1110 (W.D.Pa.1974), the court held that a statute requiring any "person in charge" of a vessel to notify the United States Coast Guard of oil discharges from the vessel applied to corporations as well as individuals, and that when applied to a corporation, only a fine may be imposed:

The defendant also argues that as a corporation it cannot be imprisoned, and therefore, this would indicate that it [the statute in question] was not intended to apply to corporations. Innumerable federal penal statutes prohibit certain activities, including business entities, and provide penalties for violation of such prohibited acts. Both individuals and corporations are penalized even though a corporation may not be imprisoned. Thus, as illustrated by antitrust cases and Internal Revenue cases, where a statute calls for imprisonment, when imposed against a defendant corporation, only the fine portion of the penalty may be imposed. *United States v. Hilton Hotel [Hotels] Corporation, supra* [467 F.2d [1000] (9th Cir. 1972) *cert. denied*, 409 U.S. 1125 [93 S.Ct. 938, 35 L.Ed.2d 256] (1973)]; *United States v. Swift & Company*, 189 F.Supp. 885 (D.C.Ill.1960), affirmed, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961).

387 F.Supp. at 1114.

Courts in other jurisdictions have similarly applied this principle, recognizing that to do otherwise would in effect

confer upon the corporation immunity for its criminal acts. Thus, the Supreme Court of Illinois has said:

> Where the statutory penalty is both fine and imprisonment, the corporate offender can be punished by imposing a fine, inasmuch as the two penalties are independent. *United States v. Union Supply Co.,* [215 U.S. 50, 30 S.Ct. 15, 54 L.Ed. 87] *supra;* 7 R.C.L. § 784. The theory is that a court shall apply the appropriate penalty in such instances as far as possible, in order that the corporate defendant shall not escape all punishment.

*People v. Duncan,* 363 Ill. 495, 2 N.E.2d 705 (1936). The Supreme Court of North Carolina has said:

> It is true that, when the statute imposes a penalty of a fine or imprisonment, only the fine can be placed upon a corporation. But this is no reason why that should not be imposed. The corporation should not be wholly exempted from punishment, because it cannot be imprisoned . . . .

*State v. Ice & Fuel Co.,* 166 N.C. 366, 369, 81 S.E. 737, 738 (1914).

And in *United States v. Van Schaick et al., supra,* the Circuit Court for the Southern District of New York reached a similar conclusion:

> But it is said that no punishment can follow conviction. This is an oversight in the statute. Is it to be concluded, simply because the given punishment cannot be enforced, that Congress intended to allow corporate carriers by sea to kill their passengers through misconduct that would be a punishable offense if done by a natural person?
>
> A corporation can be guilty of causing death by its wrongful act. It can with equal propriety be punished in a civil or criminal action. It seems a more reasonable alternative that Congress inadvertently omitted to provide suitable punishment for the offense when committed by a corporation, than it intended to give the wrongdoer impunity simply because it happened to be a corporation.

134 F. at 602.

Finally, we are unable to accept the lower court's conclusion that Section 3732 "is strictly natural person solely

operational driver oriented." For the reasons we have given, it appears to us equally to include corporations.

Reversed.

VAN der VOORT, J., notes his dissent.